UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REESE LEVI KEITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-02740-JMS-TAB |
| ) | |
| MASON, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Reese Keith brought this suit alleging that several staff members at Pendleton Correctional Facility used excessive force against him and were deliberately indifferent to his serious medical needs. Specifically, he alleges that officers twisted his arms and kept him in overly tight handcuffs, improperly used a taser on his back, inflicted unnecessary pain while restraining him in the prison infirmary, and failed to get him medical treatment for an infection on his face. The defendants have moved for summary judgment. Because material issues of fact exist that preclude summary judgment on some of Mr. Keith's claims—particularly those involving the use of a taser and unnecessary infliction of pain while Mr. Keith was restrained in the infirmary—the motion for summary judgment is **granted in part and denied in part**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois*

*Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017).

## II.
## Factual Background

### A.   The Parties

At all relevant times, plaintiff Reese Keith was an inmate at Pendleton Correctional Facility. Defendants Captain Mason, Sergeant McKinney, Lieutenant Jackson, Lieutenant

2

Bagienski, and Officer McKinney—who is not the same person as Sergeant McKinney, *see* dkt. 21—were all custody staff members at Pendleton.

### B. Initial Incident and First Trip to the Infirmary

After lunch on December 19, 2019, Mr. Keith became frustrated with a non-defendant officer over her alleged failure to properly fill out his disciplinary screening report in an unrelated matter. Dkt. 43-1 at 10:12−13:10[1] (Keith deposition). Captain Mason arrived and handcuffed Mr. Keith. *Id.* at 13:13−15. At Mr. Keith's request, Captain Mason tried to sort out the disagreement with the screening officer. *Id.* at 13:15−21. But when the screening officer contradicted Mr. Keith's version of events, Captain Mason called him a liar, pulled his arm back, and escorted him out of the building. *Id.* at 13:21−24. The defendants have submitted video of this incident, from Mr. Keith's argument with the screening officer to Captain Mason escorting him out of the building. Dkt. 66, Exh. 7.

Mr. Keith told Captain Mason that his shoulder hurt from the way Captain Mason was holding his arm while escorting him, but Captain Mason ignored him. Dkt. 43-1 at 14:4−10. Mr. Keith then refused to continue walking, so Captain Mason and another officer picked him up and carried him by his arms and legs.

Captain Mason and other officers took Mr. Keith to an empty cell, but Mr. Keith had been in that cell two weeks prior when he was suicidal, and he was afraid he would become suicidal again. Dkt. 43-1 at 19:23−20:6. Mr. Keith convinced the officers not to leave him in the empty cell, so they took him to the infirmary instead. *Id.* at 20:3−8.

Mr. Keith testifies that the officers intentionally hurt his wrists and fingers during the transport to the infirmary. *Id.* at 20:8−11. Video evidence submitted by the defendants undermines

---

[1] Citations to Mr. Keith's deposition transcript refer to the CM-ECF page numbers.

this testimony. Dkt. 66, Exh. 8. The video shows two officers escorting Mr. Keith to the infirmary. Each officer has an arm looped under each of Mr. Keith's armpits with a hand on his shoulder. Mr. Keith is handcuffed behind his back, with his upper arms (elbow to shoulder) parallel to the ground and his forearms hanging freely.

### C. Transport to Suicide Cell

After a short stay in the infirmary, officers escorted Mr. Keith to a suicide cell. At some point during this escort, Mr. Keith again refused to continue walking. Dkt. 61 (Keith declaration) ("I refused to move so that the defendants could not attempt to justify harming me further."). Mr. Keith testifies that the officers set him down and someone "put the Taser in the center of my back and Tased me." Dkt. 43-1 at 23:16−17; *id.* at 24:16−17 (noting that it lasted "only a second").

The defendants have submitted video that appears to capture this incident. Dkt. 66, Exh. 13. Three officers escorted Mr. Keith: one on each arm and a third walking to the side. *Id.* at 2:33−36. All four men walked casually until Mr. Keith abruptly dropped to the floor. *Id.* at 2:36−2:37. The officers tried to pull him back to a standing position, but Mr. Keith refused to stand. *Id.* at 2:37−2:45. At this point, Lieutenant Jackson drew his taser and apparently placed it on or near Mr. Keith's back. *Id.* at 2:47−2:53. After Lieutenant Jackson returned the taser to this belt, he and two other officers carried Mr. Keith by his arms and legs out of the infirmary. *Id.* at 2:53−3:07.

The officers then carried Mr. Keith to a suicide cell, where they removed his clothes and left him inside. Dkt. 43-1 at 25:23−26:8. Mr. Keith then began banging his head on the plexiglass and insisting that he was not suicidal. *Id.* at 27:10−16. Officers sprayed a chemical agent into the cell to get Mr. Keith to stop hitting his head, but he blocked it with his mattress and continued to hit his head. *Id.* at 28:7−29:13. Officers then entered the cell, and Mr. Keith submitted to handcuffs without further incident. *Id.* at 29:13−23.

4

### D. Return to the Infirmary

The officers next escorted Mr. Keith back to the infirmary, where they laid him face-down on a gurney, still handcuffed behind his back. Dkt. 72, Exh. 5 at 0:00−0:12. For the first two minutes that Mr. Keith was on the gurney, Lieutenant Jackson and another staff member lightly pressed on Mr. Keith's body to keep him from jerking about. Dkt. 72, Exh. 5 at 0:10−2:30. After two minutes had passed, Lieutenant Jackson put a "spit mask"—a loose mesh bag—over Mr. Keith's head. *Id.* at 2:20−2:35. Mr. Keith then repeatedly twisted his body and moved his hands toward his face to adjust the spit guard. *Id.* at 2:37−3:05. Each time, an officer returned Mr. Keith's hands to his back and held them in place. *Id.* at 2:40−3:10. After the second attempt, the officers adjusted Mr. Keith's spit mask and then held it in place. *Id.* at 3:05−55.

Then, Mr. Keith began thrashing and shaking for nearly a minute. *Id.* at 3:53−4:44. A third officer was called over to assist, and all three men held Mr. Keith's limbs in place. *Id.* at 4:12−5:09. Nursing staff also approached and assessed Mr. Keith. *Id.* at 4:12−7:15. Five officers laid hands on Mr. Keith during this time, but he cooperated with the examination and the officers did not apply significant force. *Id.* As a nurse spoke with the officers, Mr. Keith attempted to roll over, so all five officers restrained his limbs. *Id.* at 7:15−7:44. One officer bent Mr. Keith's right hand at what appears to be a painful angle for several seconds. *Id.* at 7:40−7:58.

Even with five officers restraining him, Mr. Keith continued to move slightly. *Id.* at 7:52−7:57. Lieutenant Jackson then drew his taser and placed it on Mr. Keith's back. *Id.* at 7:57−8:05. Mr. Keith began thrashing about, and the officers all pressed down on his body at once. *Id.* at 8:00−36. A nurse was present and communicated with Mr. Keith throughout, even putting her face on his level to talk to him. *Id.* at 8:50−10:20. An officer again bent Mr. Keith's right hand in an apparently painful position for roughly 50 seconds. *Id.* at 9:23−10:12. Eventually a nurse told

5

the officers to "[e]ase up on his wrists," and they did. Dkt. 43-1 at 31:9−10, 32:15−19. After that, the officers continued to restrain Mr. Keith for the rest of the examination without further significant incidents. *Id.* at 10:12−13:14. The officers rolled Mr. Keith onto his back for about a minute before moving him to a standing position and walking him out of the infirmary. *Id.* at 13:14−16:02.

### E.   Return to Cell and Assessment of Injuries

As officers escorted Mr. Keith back to the suicide cell, they no longer applied pressure to his wrists. Dkt. 43-1 at 34:18−21. Mr. Keith soon received a decontamination shower and saw a nurse about reported wrist pain. *Id.* at 34:22−19.

The next day, Mr. Keith reported an infection on his face to Sergeant McKinney. *Id.* at 36:4−11. Sergeant McKinney told Mr. Keith that he had to put in a healthcare request form, but Mr. Keith testifies that he could not submit such a form from his suicide cell. *Id.* at 36:11−13. Sergeant McKinney also told Mr. Keith that the infection looked like ordinary pimples. *Id.* at 36:25−37:3. The next day, an officer had a suicide companion fill out a healthcare request form for Mr. Keith regarding his face. *Id.* at 36:14−16. Mr. Keith obtained antibiotics from another inmate, and his face healed within two weeks. *Id.* at 37:16−38:1.

Mr. Keith testifies that his injuries included a "laceration from when they put a stun gun in [his] back." *Id.* at 34:15−17. But the video evidence, both from the day of the incident and a few days later, undermines his testimony. Several video clips show Mr. Keith's back in the minutes and hours after he was allegedly tased, and it appears free from any marks or lacerations. *See* dkt. 66, Exh. 11 at 0:10−0:13; *id.*, Exh. 12 at 0:08−0:10; dkt. 72, Exh. 5 at 14:36−14:43.

Mr. Keith also testifies that there were "cuts all around [his] wrists" and, that his right wrist was in "extreme pain," and that it was "about a month" or "about two months" before he regained

6

feeling in his right index finger and thumb. Dkt. 43-1 at 19:21–22, 34:11–17, 44:23–25. The Court has not identified any clear images of Mr. Keith's wrists from the day of the incident, but the defendants have submitted video of Mr. Keith in his cell on December 23, 2022, which was four days later. Dkt. 44, Exh. 6. The December 23 video shows no lacerations or other visible injuries to Mr. Keith's wrists. *See*, *e.g.*, *id.* at 3:04–3:18. It does, however, show Mr. Keith using both hands with no apparent pain or limitations. *See id.* at 3:05–3:07 (waving at camera with right hand), 3:08–18 (gesticulating and smacking cell door with both hands), 10:00–17:58 (using both hands to inventory possessions and change clothes),13:41–13:45 (using right hand to strap watch onto left wrist), 15:22–15:48 (leaning on left hand while conducting activities behind bed with right hand).

### III.
### Discussion

Mr. Keith presents multiple Eighth Amendment claims. *First*, he argues that the defendants applied excessive force against him at various times on December 19, 2019, by (1) twisting his arms and carrying him by his limbs, (2) keeping him in overly tight handcuffs, and (3) using a taser on him and otherwise using force against him during his second trip to the infirmary.[2] *Second*, he argues that on December 20, 2019, Officer McKinney was deliberately indifferent to the infection on his face. As to each claim, the defendants argue that they committed no constitutional violation and that they are entitled to qualified immunity. The Court addresses each set of claims separately.

---

[2] Mr. Keith does not assert that officers used excessive force when they shot a chemical agent into his cell to stop him from banging his head against the wall. Dkt. 43-1 at 29:8–10 ("I understand why they Maced me. I didn't find any fault in them Macing me at that point. It's what happened before and after that.").

### A.     Excessive Force Claims

The Eighth Amendment protects inmates from cruel and unusual punishment, which includes "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). To succeed on an Eighth Amendment excessive force claim, an inmate must prove that the force at issue was not "applied in a good-faith effort to maintain or restore discipline" and was instead applied "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (cleaned up). Several factors may inform this question, including "the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004).

Because the defendants assert qualified immunity, Mr. Keith must do more than show that a reasonable jury could find a constitutional violation. He must also point to evidence to show that the defendants violated a right that was "clearly established" at the time of the incident. *Stockton*, 44 F.4th at 620. "A right is clearly established where it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

#### 1.     Arm twisting and carrying

Mr. Keith has put forth no evidence from which a reasonable jury could find that any defendant applied excessive force by twisting his arms. Mr. Keith testifies that Captain Mason pulled him by the left shoulder, causing pain. Dkt. 43-1 at 42:12−20. He also testifies that when he refused to continue walking and the officers began carrying him, that also caused pain. *Id.* at

43:1−2. However, the shoulder pain lasted only "about a day," and Mr. Keith explained that the pain from being carried "wasn't my issue." *Id.* at 42:20−43:2.

The video evidence showing Captain Mason lifting Mr. Keith's left arm and looping his own underneath, with a hand on Mr. Keith's shoulder, and escorting him out of a building. Dkt. 66, Exh. 7 at 1:13:47−1:14:00. Captain Mason continued to escort Mr. Keith, usually with another officer, in a similar manner in various locations. *See* dkt. 44, Exh. 3 at 1:54−2:29 (with an unknown female officer); dkt. 72, Exh. 4 at 0:30−0:42 (with Lieutenant Jackson); dkt. 66, Exh. 8 at 0:07−0:32 (with Lieutenant Jackson). This approach allowed officers to control Mr. Keith when he tried to free himself while they were walking outside. Dkt. 44, Exh. 3 at 2:18−2:29. And it allowed officers to control Mr. Keith when Mr. Keith tried to kick another officer outside the infirmary. Dkt. 66, Exh. 8 at 0:28−0:31. No reasonable jury would find that this hold was intended to inflict pain. Instead, it was used to maintain a secure hold if and when Mr. Keith threatened prison safety and security.

As for the carrying, it is unclear whether Mr. Keith even alleges that this was excessive force. *See* dkt. 43-1 at 43:1−2 ("When I stopped moving and they were carrying me, that caused pain, but that wasn't my issue."). To the extent he does, the defendants are entitled to summary judgment. Mr. Keith acknowledges that the defendants carried him only when he refused to walk. *Id.* at 20:21−23 ("And as they're carrying me, because I wouldn't walk, I refused to move because I didn't want them to hurt me."). The video evidence shows that the defendants carried Mr. Keith by the legs and elbows, apparently providing him ample support. Dkt. 66, Exh. 9 at 0:27−0:35. And Mr. Keith provides no evidence that he was seriously injured.

Because Mr. Keith has not pointed to evidence from which a reasonable jury could find an Eighth Amendment violation based on the defendants twisting his arms or carrying him, the defendants are entitled to summary judgment on this set of claims.[3]

### 2. Tight handcuffs

Similarly, no reasonable jury could find based on the summary judgment record that any defendant used excessive force by applying Mr. Keith's handcuffs too tightly or by failing to loosen them upon request.

Mr. Keith testifies that the defendants applied the handcuffs too tightly when they prepared to take him to the infirmary for a second time. By this point, Mr. Keith had repeatedly resisted escorting officers, refused to follow orders, and attempted self harm. Dkt. 44, Exh. 3 at 2:18−2:29 (video of Mr. Keith trying to break free from an escorting officer's hold); dkt. 66, Exh. 8 at 0:28−0:31 (video of Mr. Keith trying to kick an officer); dkt. 43-1 at 23:25−24:1 (Mr. Keith admitting that he banged his head on plexiglass after being placed in suicide cell); *id*. at 20:21−23 (Mr. Keith admitting that he refused to walk during first escort to suicide cell); dkt. 66, Exh. 13 at 2:34−2:48 (video of Mr. Keith abruptly falling to the floor and refusing to stand during first escort to infirmary). The handcuffing officer therefore had reason to ensure that the handcuffs were secure.

At some point as officers escorted him to the infirmary, Mr. Keith notified them that his handcuffs were too tight. Dkt. 43-1 at 20:11−14. The officers did not loosen the handcuffs or lock them in place. *Id.* The video evidence shows, however, that the handcuffs were not so tight as to restrict Mr. Keith from rotating his hands within them. As Mr. Keith lay face down on the gurney,

---

[3] Because the Court has found that the defendants did not violate Mr. Keith's Eighth Amendment rights by twisting his arms or carrying him, the Court need not address whether the defendants are entitled to qualified immunity as to this set of claims.

he repeatedly twisted his arms and rotated his hands within the handcuffs to reach his face with his right hand. Dkt. 72, Exh. 5 at 2:18−3:10. This maneuver involved Mr. Keith quickly sliding his right wrist around within the handcuffs to rotate it at least 180 degrees. *Id.* And, notably, Mr. Keith testified that his right wrist was the one that was suffered more serious injury. Dkt. 43-1 at 34:11−14. So while the Court accepts Mr. Keith's testimony that the handcuffs were tight enough to cause some level of pain, the video shows that they were not so tight as to restrict him from rotating his wrists within the cuffs.

Considering all the evidence presented by the parties, no reasonable jury could find that the use of handcuffs was malicious or sadistic. And even if a reasonable jury could find a constitutional violation, the defendants are entitled to qualified immunity. To be sure, it was clearly established in December 2019 that officers could not use handcuffs to inflict "prolonged, unnecessary pain on a prisoner." *Ajala v. Tom*, 658 F. App'x 805, 806−07 (7th Cir. 2016) (reversing grant of summary judgment where plaintiff provided evidence that defendants "refus[ed] to loosen painfully tight handcuffs for several hours, causing lasting damage and pain," even though plaintiff was also restrained by leg shackles and an electric-shock device).[4] But here, a reasonable officer may have believed that the infliction of some degree of pain was necessary to prevent Mr. Keith from continuing to refuse orders, attempt to harm officers, and attempt to harm

---

[4] In *Ajala*, the court construed the plaintiff's claim as challenging his conditions of confinement, because he remained in the handcuffs for a four-and-a-half-hour vehicle transport. *Ajala*, 658 F. App'x at 807. The court therefore applied a "deliberate indifference" test instead of requiring the plaintiff to show that the defendant had maliciously inflicted pain. *Id.* ("[O]nce Ajala was securely restrained in the van, Defendants didn't need to make any split-second judgments to which we would afford an extra degree of deference."). Here, in contrast, Mr. Keith was kept in handcuffs for a much shorter length of time while he was being escorted to the infirmary and while a nurse evaluated him in close proximity. Mr. Keith's claims is therefore better construed as one of excessive force. *See Hudson*, 503 U.S. at 6−7 (affording deference to officials' in situations that "may require prison officials to act quickly and decisively"). Regardless, the defendants would be entitled to qualified immunity even if Mr. Keith's claim is properly viewed as challenging his conditions of confinement.

himself. And because a reasonable officer could have believed that this use of force was constitutional under the circumstances, the defendants are entitled to qualified immunity. *Stockton*, 44 F.4th at 620−21.

### 3. Taser use and other force in the infirmary

The defendants are not entitled to summary judgment as to Mr. Keith's claims alleging that they used excessive force against him by deploying a taser against him and by forcibly restraining him in the infirmary.

Mr. Keith testifies that Lieutenant Jackson used a taser on him in the hallway outside the infirmary. Dkt. 43-1 at 23:16−17. The defendants have presented video and documentary evidence indicating that Lieutenant Jackson used a taser on Mr. Keith inside the infirmary. Dkt. 43-2 (report of use of physical force); dkt. 66, Exh. 13 at 2:47−2:53. Viewing the facts in the light most favorable to Mr. Keith, the Court assumes for purposes of this Order that Lieutenant Jackson used the taser on both occasions.

A reasonable jury could find that Lieutenant Jackson's use of the taser on one or both occasions violated the Eighth Amendment. Officers may use painful but non-deadly force "to subdue recalcitrant prisoners . . ., and this is so whether the inmate is locked in his prison cell or is in handcuffs." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (approving the use of chemical agents). But that does not mean an officer is free to use such force any time an inmate acts out or refuses an order. *See Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009); *Williams v. Esser*, No. 21-2175, 2022 WL 258638, at *2−3 (7th Cir. Jan. 27, 2022). And acceptable use of a taser should "generally follow adequate warnings." *Lewis*, 581 F.3d at 479 (cleaned up).

There is no evidence that Lieutenant Jackson warned Mr. Keith before using a taser on him inside or outside the infirmary. And a reasonable jury could find that Mr. Keith was not actively

resisting or refusing to comply with orders in the moments before Lieutenant Jackson employed the taser.

Additionally, both Mr. Keith's testimony and the video evidence would allow a reasonable jury to find that Lieutenant Jackson and at least one other officer bent his hands and wrists into painful positions while Mr. Keith was restrained in the infirmary. *See* dkt. 72, Exh. 5 at 7:40−58; dkt. 43-1 at 30:4−7. The officers have not submitted any affidavits, declaration, or other evidence to explain why such use of force was necessary under the circumstances.

The Court therefore finds, as to Lieutenant Jackson's use of a taser outside the infirmary, *see* Exh. 14, as well as the officers' use of force inside the infirmary, *see* Exh. 5, there are disputed issues of material fact as to whether force was applied in good faith to maintain or restore order or, instead, if the officers' only reason for applying force was to inflict pain on Mr. Keith.

No reasonable officer could have believed that the intentional infliction of force for no purpose other than to inflict significant pain on an inmate was constitutional. *See Williams*, 2022 WL 258638, at *3; *Lewis*, 581 F.3d at 479. So, in light of the disputed issues of material fact, the defendants are not entitled to qualified immunity on this set of claims.

The Court notes that the video evidence undermines Mr. Keith's testimony about his injuries. *See* dkt. 43-1 at 19:20−22, 43:25−44:4, 44:23−25 (Mr. Keith testifying that he had lacerations and bruising, plus numbness in his right hand for "about a month" or "about two months"). On December 23, 2019, only four days after the incidents at issue, there were no apparent lacerations or injuries on either wrist. Dkt. 44, Exh. 6 at 3:04−3:18. And Mr. Keith appeared to have full use of both hands, using them to smack his cell door, get dressed, and strap on a watch. *Id.* at 3:08−18, 10:00−17:58. But while Mr. Keith's lack of significant injury may limit his damages, that is not a basis for granting summary judgment in this case.

### B. Deliberate Indifference Claim

Finally, Mr. Keith alleges that he told Officer McKinney about an infection on his face the day after the incident and that Officer McKinney was deliberately indifferent to his serious medical need when he told Mr. Keith to submit a healthcare request form and offered no other assistance.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For purposes of this Order, the Court assumes that Mr. Keith indeed suffered from an infection on his face and that the infection was a serious medical condition. But no reasonable jury could find that Officer McKinney was deliberately indifferent. There is no evidence that Mr. Keith's infection was an emergency that required immediate medical attention. So no reasonable jury could find that Officer McKinney was deliberately indifferent by requiring Mr. Keith to wait for an inmate suicide companion to fill out a healthcare request form on his behalf the next day. Officer McKinney is therefore entitled to summary judgment on this claim.

## IV.
## Conclusion

The defendants' motion for summary judgment, dkt. [43], is **DENIED** as to Mr. Keith's allegations of excessive force in the infirmary, as depicted in Exhibit 5, and his allegation of being subject to a taser outside the infirmary, as depicted in Exhibit 13. These claims will be resolved by settlement or trial. As to all other claims, the motion for summary judgment is **GRANTED**.

The **clerk is directed** to terminate Officer McKinney—but not Sergeant McKinney—as a defendant on the docket. No partial final judgment will issue at this time.

On its own motion, the Court reconsiders and **GRANTS** Mr. Keith's second motion for assistance with recruiting counsel, dkt. [34], insofar as the Court will attempt to recruit counsel to represent Mr. Keith in future proceedings in this case.

**IT IS SO ORDERED**.

Date: 9/13/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

REESE LEVI KEITH
220066
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov